United States District Court
MGM-SDTX
FILED

APR 23 2026 3B

Nathan Ochsner, Clerk
Laredo Division

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 5:25-CR-00127** |
| | § | |
| **IGNACIO RODRIGUEZ IV,** | § | |
| **Defendant.** | § | |

**PLEA AGREEMENT**

The United States of America, by and through John G.E. Marck, Acting United States Attorney for the Southern District of Texas, and Leslie Ann Cortez, Assistant United States Attorney, and the defendant, Ignacio Rodriguez IV ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

**Defendant's Agreement**

1. Defendant agrees to plead guilty to Count One of the indictment. Count One charges Defendant with Deprivation of Rights Under Color of Law, in violation of Title 18, United States Code, Section 242. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

Defendant further agrees that:

a. he will forfeit any Texas Peace Officer's License, Texas Jailer's License, private security license, or any similar license in any other jurisdiction or private organization.

**Punishment Range**

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 242, is imprisonment for any term of years or life, and a fine of not more than $250,000. *See* Title 18, United States Code, Sections 242 and 250(b)(1). Defendant may receive a term of supervised release after imprisonment of not more than 5 years. *See* Title 18, United States Code, Sections 3559(a)(1) and 3583(b)(1). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 5 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(1) and 3583(e)(3).

**Notification of the Sex Offender Registration and Notification Act**

Defendant has been advised, and understands, that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: where he resides; where he is an employee; and where he is a student. The Defendant understands that the requirements for registration include providing his name, his residence address and the names and addresses of any places where he is or will be an employee or a student, among other information. The Defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three (3) business days after any change of residence, employment, or student status. Defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

Pursuant to Title 18, United States Code, Section 3014(a)(2), immediately after sentencing, and in addition to the mandatory special assessment identified above, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5,000.00) per count of conviction, if non-indigent as determined by the court. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea

of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Cooperation**

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this

Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his/her counsel, the United States, or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

**The United States' Agreements**

11. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the

United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

(c) If Defendant pleads guilty to Count One of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will recommend a custodial sentence of 120 months.

**Agreement Binding - Southern District of Texas Only**

12. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any

investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Nonetheless, Defendant has made an agreement with the government pursuant to Rule 11(c)(1)(C) that binds the Court to sentence the Defendant to a custodial term of imprisonment of 120 months as to Count One and to forfeit any Texas Peace Officer's License, Texas Jailer's License, private security license, or any similar license in any other jurisdiction or private organization, and includes other conditions prohibiting future employment as a security guard or law enforcement officer.

**Rights at Trial**

15. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

16. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On September 1, 2024, at approximately 3:38am, Webb County Sheriff's Deputy Ignacio Rodriguez IV (Rodriguez) was travelling east on Highway 359 in Webb County, Texas in his marked patrol unit when he observed a vehicle travelling on the wrong side of the roadway towards oncoming traffic. Rodriguez made a U-turn, activated his emergency lights and initiated a traffic stop on the vehicle.

Rodriguez approached the vehicle on the right-hand side and identified himself as Deputy Rodriguez with the Webb County Sheriff's Office (WCSO). A.R. was seated in the driver's seat with one additional passenger seated in the front passenger seat. A.R. and the passenger were wearing bikini tops and told Rodriguez they were coming from a pool party. Rodriguez asked the women if they had anything to drink that night and was told that both A.R. and the passenger had been drinking.

Rodriguez then had A.R. exit the vehicle and brought A.R. to the right side of his patrol vehicle. Rodriguez then had the passenger exit the vehicle and brought her to the same side of his marked patrol vehicle and asked both women basic questions about where they were going.

Through body-worn camera footage, Rodriguez was observed walking back to the vehicle the females were occupying and verbally noted that were open alcoholic beverages in the vehicle. Rodriguez then returned to A.R. and the passenger who were still standing next to his patrol unit. Rodriguez then communicated something to the women that was inaudible, but caused the women to react. Both women appeared to laugh, then become visibly uncomfortable. The passenger responds, "listen, don't make us that face."

At approximately 3:43am, Rodriguez turned his body worn camera off. The passenger began recording pieces of their interaction with Rodriguez on her phone. In these interactions, the women were pleading with Rodriguez to be let go and Rodriguez stated multiple times that the women needed to convince him to be let go. In these interactions, Rodriguez was observed resting his hand on his firearm. Rodriguez then instructed the women to follow him to a street nearby.

Before leaving the scene of the traffic stop, Rodriguez took A.R.'s phone from her hands. Rodriguez then had A.R. and the passenger follow him in his assigned WCSO marked patrol vehicle to Wilcox Road off of highway 359. A local business's surveillance cameras captured footage of Rodriguez turning off the headlights to his patrol unit with A.R.'s headlights shutting off shortly after.

Once on Wilcox Road, the passenger remained in the vehicle that A.R. had driven. Rodriguez then made A.R. perform oral sex on him inside of his assigned WCSO marked patrol

vehicle. According to WCSO Call Sheet Reports, the traffic stop was cleared as a warning at approximately 3:53am, approximately 10 minutes after Rodriguez turned off his body camera.

After A.R. and the passenger departed the location, A.R. dropped the passenger off at a different location and picked up her sister and travelled to a different location for a get-together where A.R.'s girlfriend was present. A.R. and her girlfriend got into a physical altercation and the police were then called and officers with the Laredo Police Department (LPD) arrived at the location around 5:30 in the morning. A.R's sister told LPD officers that A.R. told her a sheriff's deputy by the name of Rodriguez tried to take advantage of her. A.R. was taken home by her family then made a formal outcry of sexual abuse against Rodriguez later that morning. A.R. then received a message from Rodriguez on her cell phone at 6:31 am asking, "U get home ok".

A.R. was taken to the Laredo Medical Center at approximately 4:53 pm to receive a Sexual Assault Nurse Examiner (SANE) exam.

The Laredo Police Department then initiated their own investigation into the matter and collected various pieces of evidence from Rodriguez and his patrol unit, including a black towel discovered in his patrol unit. This towel was tested for DNA by the Texas DPS Crime Laboratory and the results indicated both Rodriguez's and A.R.'s DNA were present.

A.R. was subsequently interviewed after her outcry and described that on the date of the incident, she was coming from a pool party she had been drinking at when she was stopped by Rodriguez. A.R. recalled Rodriguez had said that he did not want to arrest them and asked what they could do or what kind of arrangement they could make. A.R. then said to Rodriguez he should allow them to go to their house. Rodriguez responded by saying that they needed to convince him to allow them to be let go. A.R. then noticed that Rodriguez turned his camera off because

Rodriguez had moved a button and a red light went off. Once Rodriguez turned off his camera, A.R. knew that something was not right. Rodriguez was very persistent that A.R. and the passenger had to convince him to allow them to go. The passenger asked Rodriguez if "this was what you guys do or what?" Rodriguez shrugged his shoulders as if he was saying yes. Around that time is when A.R. realized that Rodriguez wanted a sexual favor. A.R. told Rodriguez that she did not want to do anything like that because she was a lesbian. A.R. asked Rodriguez to let them go and offered their telephone numbers and Facebook accounts. Rodriguez said no to that offer. A.R. then told Rodriguez to arrest them. Rodriguez told A.R. and the passenger that he would let them go but they first needed to go somewhere with Rodriguez. Although Rodriguez did not specifically say what would convince him, he did say that one of them, referring to A.R. and the passenger, "had to do it." A.R. told Rodriguez, "not me, I'm not going to do anything."

A.R. asked Rodriguez what would happen if they just left. Rodriguez told A.R. that it would go bad for them and things would get worse. A.R. said that the first thing that came to her mind after Rodriguez said this was the Border Patrol Agent who had killed several women in Laredo. A.R. stated that Rodriguez's hands were resting on the gear attached to Rodriguez's belt while he talked with A.R. and The passenger. While A.R. was standing outside of Rodriguez's vehicle, Rodriguez touched A.R. under her bra. A.R. recalled Rodriguez "yanking" her phone from her hands. A.R. believed Rodriguez took her phone because Rodriguez wanted to make sure A.R. would go with Rodriguez and not attempt to leave. Rodriguez took A.R.'s phone into his vehicle and had A.R. drive and follow Rodriguez. While A.R. followed Rodriguez's vehicle, The passenger told A.R. to leave, but A.R. told The passenger that Rodriguez would follow them and there is no one else around and A.R. did not know what could happen. Rodriguez parked his vehicle and A.R.

parked behind Rodriguez. A.R. did not drive off when following Rodriguez because she thought Rodriguez would shoot at them.

At the second location, Rodriguez stated that someone "had to do it". A.R. again told Rodriguez that she was a lesbian and that she was not good and had never "done it". Rodriguez unzipped only the zipper of his pants in front of A.R. and the passenger and stood there waiting. Rodriguez told A.R. to do it in front of her friend. Around this time, Rodriguez said that he did not like the passenger and that he liked A.R. A.R. did tell Rodriguez numerous times that she did not want to do anything with Rodriguez. Rodriguez took A.R.'s hands and put them behind her back, as if he was arresting her. Rodriguez never used handcuffs, but wanted to make it look like he was arresting her. Rodriguez then walked A.R. to his vehicle. A.R. understood that Rodriguez had walked her to his vehicle because he wanted to do something sexual.

Rodriguez brought A.R. to the driver's side of his vehicle and sat A.R. down. Rodriguez then told A.R. to go to the passenger side of the vehicle because Rodriguez was going to check on the passenger. When Rodriguez went to check on the passenger, A.R. saw her phone on center console and cup holder area. A.R. then took a picture of Rodriguez's computer screen with her phone which displayed the name Ignacio Rodriguez IV.

When Rodriguez walked back to his vehicle, A.R. put her phone back where she found it. Rodriguez sat in the driver's seat of his vehicle and unzipped his pants. Rodriguez's duty belt with his firearm and pants stayed on. Rodriguez told A.R. to "go for it". A.R. told Rodriguez that she did not want to, did not know how to and that she had a girlfriend. A.R. then told Rodriguez that maybe later after A.R. and Rodriguez could get to know each other more. A.R. offered Rodriguez to follow A.R. home so that Rodriguez knew where A.R. lived. Rodriguez said no. A.R. did not

know what else she could do. Rodriguez then took out his penis. Rodriguez pulled A.R. by the back of her arm/shoulder towards him. Rodriguez's penis was not initially erect. A.R. said her head went up and down and Rodriguez told A.R. to put more saliva and touch his testicals with her hand. Rodriguez held A.R. down by the back of her head and A.R. threw up from Rodriguez's penis hitting the back of her throat. When A.R. threw up, Rodriguez ejaculated.

Rodriguez asked A.R. if she wanted a wipe. A.R. wiped her mouth with the wipe from Rodriguez. Rodriguez said he was going tell the passenger that A.R. was drunk and that he gave A.R. water and gummies while A.R. put her information in the computer. Rodriguez told A.R. that he was an ex-marine and also told A.R. to unlock her phone and add Rodriguez's number. Rodriguez told A.R. to call his number so that A.R. could see it was Rodriguez's number. A.R. called the number and Rodriguez's phone rang. After Rodriguez phone rang, he gave A.R. her phone back. When A.R. exited Rodriguez's vehicle, Rodriguez told A.R. to tell the passenger that he gave her gummies and water. Rodriguez walked with A.R. back to her vehicle and gave the passenger a thumbs up to signal you are okay to leave.

Defendant hereby confesses and judicially admits that on September 1, 2024, he willfully deprived A.R.'s liberty without due process of law, which includes the rights to bodily integrity and bodily privacy, rights secured and protected by the Constitution and laws of the United States, when he caused his penis to have contact with A.R.'s mouth and when he groped A.R.'s breast without A.R.'s consent and without a legitimate law enforcement purpose. These acts included the use and ~~threatened use of a firearm, kidnapping,~~ bodily injury, aggravated sexual abuse and abusive sexual contact.

LAC 4.23.26
4.23.26

**Breach of Plea Agreement**

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

**Monetary Penalties, Assets and Financial Disclosures**

18. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

**Restitution**

20. Defendant agrees to pay full restitution to the victim regardless of the counts of conviction. Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by U.S.S.G. §1B1.3, including conduct pertaining to any dismissed counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

**Financial Statement**

21. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

22. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

23. This written plea agreement, consisting of 17 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Laredo, Texas, on April 23, 2026.

IGNACIO RODRIGUEZ IV

APPROVED:

JOHN G.E. MARCK
United States Attorney

By: Leslie Ann Cortez
Assistant United States Attorney
Southern District of Texas

Javier Guzman
Attorney for Defendant